THE PITTSBURG ELECTRIC RAILWAY COMPANY V.
THOMAS F. KELLY.

No. 9118.

APPELLATE PRACTICE—*judgment on verdict reversed, new trial, not judgment, ordered unless special findings unequivocal.* In an action against a street railway company by a person engaged in grading the street for a paving contractor, to recover for injuries received while working between the rails, where it is uncertain under all the testimony and findings of the jury based thereon, whether he was guilty of culpable negligence contributing to his injury or not; and where the jury were erroneously instructed by the court, that in order to recover the plaintiff must show that the defendant was guilty of gross and wanton negligence; a finding as follows: "Question. Was the plaintiff guilty of negligence which contributed to his injury? Answer. Yes, to some extent," is insufficient when opposed to a general verdict in favor of the plaintiff to require that judgment be entered for the defendant. There being doubt whether the jury meant to do more than find the plaintiff guilty of slight negligence, instead of directing judgment on the special findings a new trial will be ordered.

*Error from Crawford District Court.*
*Hon. J. S. West, Judge.*

REVERSED AND REMANDED.     OPINION FILED DECEMBER 5, 1896.

THIS was an action brought by Thomas F. Kelly against the Pittsburg Electric Railway Company to recover damages for injuries sustained by him while working as an employee of the Vitrified Brick Company, which was engaged in paving Broadway, in the city of Pittsburg. At the time of the injury the plaintiff was engaged in removing dirt from between the rails of the street railroad, and while so engaged, with his back towards an approaching car, was run over and seriously injured. The petition alleges gross and wanton negligence on the part of the motorman in operating the car. After the conclusion of the tes-

timony, the following with other instructions were given to the jury :

"2. In order for the plaintiff to recover, the burden of proof is upon him to show by a preponderance of the testimony that his injury was caused by the gross and wanton negligence of the defendant, which means such negligence upon the part of the motorman who was operating the car for the defendant. This is the vital question in the case.

"3. Ordinary care is such as men of ordinary intelligence and carefulness would use under like circumstances as those in question, and slight care is such as men of less than ordinary care and prudence would thus use ; and the failure to use slight care under such circumstances as to show a reckless indifference whether an injury is done to another or not, when there is known danger of injury, is gross negligence amounting to wantonness, and whether or not the plaintiff was to blame for not getting out of the way of the car, the defendant had not the right to wantonly run over and injure him, and if it did it would be liable in damages."

The defendant requested that 45 questions be submitted to the jury.   Part were submitted and part refused.   The 45th question, which is as follows : "Did the motorman, Moore, know that the man on the track was the plaintiff, Kelly?" was refused.   The jury rendered a general verdict in favor of the plaintiff for $3,000, and answered the special questions submitted as follows :

"1. Had plaintiff been working on Broadway in Pittsburg and in between the street railway tracks for from thirty to sixty days prior to the accident?   A. Yes.

"2. Did plaintiff know at about what intervals the street cars were passing up and down the street?   A. Yes.

"3. Did the street cars, during the time the plaintiff was working on the streets, pass up and down by

the plaintiff at intervals of about one-half hour?    A. Yes.

"4.    Did the plaintiff know this to be the fact?    A. Yes.

"5.    Were there other men working with the plaintiff?    A. Yes.

"6.    Were all the men who were working on the street, including plaintiff, when working in between the rails, in the habit of stepping out from between the rails as the car approached, to let the car pass? A. Yes.

"7.    Had the plaintiff done this a number of times almost every day for from thirty to sixty days immediately prior to the accident?    A. Yes.

"8.    Did the plaintiff see the car approaching at the time of the accident?    A. No.

"9.    If you state No. 8 in the negative, state why plaintiff did not see the car.    A. Had back to approaching car.

"10.    Did the plaintiff hear the car as it was approaching at the time of the accident?    A. No.

"11.    If he did not hear the car, state why.    A. He was hard of hearing, and wind was blowing from south, while the car approached from north.

"12.    Could plaintiff have seen the car approach if he had looked?    A. Yes.

"13.    Was plaintiff deaf?    A. No, he was a little hard of hearing.

"14.    Was there anything to prevent plaintiff from seeing the car as it approached but his failure or refusal to look?    A. No.    But there is no evidence that plaintiff refused to look.

"15.    Did the motorman, Moore, expect that plaintiff would get off of the track with the other men when the car approached?    A. Yes.

"16.    Did the motorman, Moore, ring the bell and shout as he approached the men working between the tracks?    Yes, but too late to stop car before passing place where men were at work.

"17.    Did the plaintiff hear the motorman shout, or hear the bell ring as the car approached?    A. No."

"19.    Could the plaintiff have gotten out of the way

of the car if he had looked or watched for its approach? A. Yes."

"21. Could the plaintiff have gotten out of the way of the car if he could have heard the car approaching? A. Yes, if he had heard in time."

"25. Was the defendant guilty of negligence, causing the injury to plaintiff? A. Yes.

"25½. If you answer No. 25 yea, state fully in what such negligence consisted. A. In not keeping car under his control so he could stop it quickly."

"28. Was the plaintiff guilty of negligence which contributed to his injury? A. Yes, to some extent.

"29. Why did n't plaintiff get out from between the rails as the car approached, at the time this accident occurred? A. Did n't hear car approach."

"31. Could plaintiff have seen the car approach for a distance of a block from the place of the injury, if he had looked? A. Yes.

"32. Was plaintiff's injury caused or occasioned by his defect in hearing? A. No."

"35. Was there any obstruction to prevent plaintiff from seeing the car as it approached at the time of the accident? A. No."

"38. Did the motorman, Moore, know that the men were in the habit of stepping out from between the rails to let the cars pass? A. Yes.

"39. Did the motorman, Moore, try his best to stop the car when he saw that plaintiff was not going to get out of the way? A. Yes, but too late to stop the car."

"41. Did the other men who were working between the rails with plaintiff at the time of the accident get out of the way without being injured? A. Yes.

"42. Did the motorman, Moore, purposely and intentionally run the car over plaintiff? A. No.

"43. Was the conduct of the men, including plaintiff, who were working between the rails of the track in stepping aside to let the cars pass as they approached, such as to reasonably cause and induce the motorman, Moore, to believe that they would continue to step aside for the cars to pass as they ap-

proached, and that the plaintiff in this case would step aside at the time of the accident? A. Yes.

"44. Is it a fact that the plaintiff Kelly was not thinking about, or looking for the car, at and before the time of the accident? A. Yes."

The defendant moved for a judgment on the special findings, and also for a new trial. Both motions were overruled, and judgment entered in favor of the plaintiff for the amount of the verdict. The defendant brings the case here for review.

*Morris Cliggitt*, for plaintiff in error.

*T. W. Cogswell*, and *Fuller & Randolph*, for defendant in error.

ALLEN, J. In the trial of this case the Court seems to have considered that ordinary negligence on the part of the plaintiff was conclusively established ; and in the second instruction told the jury that in order to recover the plaintiff must show that his injury was caused by the gross and wanton negligence of the motorman. This instruction was not warranted by the evidence in the case. Whether the plaintiff was chargeable with ordinary negligence contributing to his injury was an open question, which should have been left to the jury to determine. The findings of the jury in answer to special questions submitted exonerate the motorman, Moore, from purposely injuring the plaintiff, and also from gross and wanton negligence. It is even doubtful whether they do not exonerate him from any culpable negligence. We think the Court erred in refusing to submit the 45th question. If the motorman, Moore, knew that Kelly's hearing was defective, and knew that the man on the track was Kelly, it would materially affect the question as to what would be reasonable

care on his part in propelling his car toward him. We have little difficulty in reaching the conclusion that the judgment must be reversed. The instructions were erroneous in that they require proof of gross and wanton negligence on the part of the defendant. This error was prejudicial to the rights of the plaintiff. The special findings of the jury clearly negatived the idea of wanton or intentional injury. The most difficult question for us to determine is whether or not the findings compel a judgment in favor of the defendant. The 28th question and answer are as follows : '' Question. Was the plaintiff guilty of negligence which contributed to his injury? Answer. Yes, to some extent.'' If the case had been submitted under proper instructions, and the other findings had, as in this case, negatived wanton or wilful injury, it would seem that such a finding would require that judgment be entered for the defendant. But the jury were here given to understand by the Court, that the plaintiff might recover notwithstanding his own negligence contributed to the injury, and that the vital question in the case was whether or not the negligence of the motorman was gross and wanton. The answer to the question, though in the affirmative, is qualified by the words '' to some extent.'' Juries cannot be expected to select words with that nice discrimination and technical accuracy that may fairly be required of judges and counsel learned in the law. It does not seem a great stretch of language to say, when all the findings and all the evidence on which they are based are considered, that the jury meant merely to find that the plaintiff was guilty of slight negligence in failing to look to see whether a car was approaching at that particular time. His attention generally was very

properly directed to the performance of the work in which he was engaged. While it was incumbent on him to take reasonable precautions for his own safety, the jury may have thought that he could not reasonably be expected to be at all times thinking about approaching cars and watching for them. Although it is found that the men working on the track were accustomed to get out of the way of approaching cars, it was the duty of the motorman to observe the track ahead of him, to regulate the movements of his car, and to look out for the safety of passengers he might be carrying and persons and property on the roadway. Whether he exercised reasonable care in propelling his car toward the gang of men working on the track, even though they were accustomed to step out of his way, was a matter within the province of the jury to determine. On the whole record, we seriously doubt whether the jury by this answer intended to find that the plaintiff was guilty of culpable negligence contributing to his injury. A judgment on the special findings ought not to be directed by this Court unless they are reasonably clear and unequivocal. We should be reasonably certain that we are not construing into the language employed by the jury a meaning they never intended.

The judgment will be reversed, and a new trial ordered.

MARTIN, C. J., concurring.

JOHNSTON, J. I concur in the judgment of reversal, but in my view the plaintiff in error is entitled to judgment on the special findings. The jury found that Kelly was guilty of negligence and that it contributed to his injury. This fact defeats a recovery and should end the controversy.